UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KYMBERLY M. PROCACCINO | CIVIL ACTION |
| v. | NO. 17-4748 |
| DAVID J. JEANSONNE, II, ET AL. | SECTION "F" |

ORDER AND REASONS

Before the Court is the plaintiff's motion for attorney's fees. For the reasons that follow, the motion is GRANTED.

**Background**

This lawsuit, which arose from the alleged breach of a severance agreement confected after the end of an office romance led to the plaintiff's termination of employment, was settled by the parties. The only issue remaining is whether the plaintiff may recover attorney's fees incurred during the time in which the defendants refused to abide by the settlement agreement.

This factual summary assumes familiarity with the Court's Order and Reasons dated July 12, 2017, which is hereby incorporated by reference. The Court restates the more salient facts bearing on Ms. Procaccino's request for attorney's fees. David Jeansonne II owns or co-owns various limited liability companies, including

1

Traffic Jam Events, LLC (TJE). Before May 2012, Kymberly Procaccino was employed by TJE. Ms. Procaccino was also romantically involved with Mr. Jeansonne. When their romantic relationship ended, Mr. Jeansonne terminated Ms. Procaccino's employment.

On May 16, 2012, Ms. Procaccino agreed to release any claims respecting her termination of employment and, in exchange, Mr. Jeansonne and his affiliated companies agreed to pay Ms. Procaccino a total of $120,000, payable in monthly installments of $10,000.[1] The first $10,000 installment payment was timely made, but no other installment payments followed. According to Ms. Procaccino, Mr. Jeansonne refused additional payment due to his personal ill feelings.

On May 5, 2017, Ms. Procaccino sued Mr. Jeansonne along with Traffic Jam Events, LLC (TJE), Platinum Plus Printing, LLC (PPP), and DTJ Properties, LLC (DTJ) in this Court, invoking the Court's diversity jurisdiction. Ms. Procaccino alleged that the defendants' refusal to pay the remaining 11 installment payments

---

[1] The severance agreement calls for application of Louisiana law. Among its other terms is a confidentiality provision in which Ms. Procaccino agrees not to disclose certain confidential information as well as a provision calling for the breaching party's reimbursement of reasonable attorney's fees and costs to the non-breaching party.

pursuant to the severance agreement constitutes breach of contract. She sought to recover the $110,000 owed under the severance agreement; all reasonable attorney's fees and costs she incurs in enforcing the severance agreement; damages for losses due to the defendants' bad faith refusal to perform their obligation; and damages for nonpecuniary loss pursuant to Louisiana Civil Code article 1998.

Shortly after this lawsuit was filed and defendants were served, on May 15, 2017, defense counsel, Stephen Kepper called plaintiff's counsel, Jacob Weixler, to attempt to settle the case and to obtain the plaintiff's consent to seal her complaint.[2] Mr. Weixler told Mr. Kepper that she agreed to seal the complaint without waiving any challenge to the merits of Mr. Jeansonne's confidentiality arguments. Mr. Kepper stated that he was given an order from his client to file an answer and counterclaims to Ms. Procaccino's complaint, or settle the case, by the end of the day (May 15). Mr. Kepper stated that his client authorized him to settle all claims between the parties for $130,000. Ms. Procaccino rejected the offer.

---

[2] The facts concerning settlement negotiations are summarized from the sworn declarations of Mr. Jeansonne, as well as counsel for plaintiff, Jacob Weixler, counsel for defendants, Stephen Kepper, and Thomas McEachin, who is a named partner at the firm where Mr. Weixler is an associate attorney.

To counter, Mr. Weixler proposed a settlement that would only resolve Ms. Procaccino's claim under the severance agreement for $130,000, but Mr. Kepper insisted that the defendants were only interested in a global settlement that would settle all claims that may exist between the parties; he stated that he would not engage in discussions limited to settling only the claim underlying this lawsuit. In particular, Mr. Kepper represented that his clients also wished to discuss resolution of a real estate dispute between Ms. Procaccino and Mr. Jeansonne as a part of any settlement of the severance agreement lawsuit.[3] Nevertheless, Mr. Kepper agreed to discuss the counteroffer with his client. Mr. Kepper did so and then left Mr. Weixler a voicemail message; when Mr. Weixler returned his call, Mr. Kepper stated that the defendants were only interested in settling all claims that may exist among the parties. Mr. Kepper then said "I have my clients' authority to settle for $180,000." He said that he was "surprised" that Mr. Jeansonne gave him this authority given "who he is" and the aggressive approach he has taken toward Ms. Procaccino and

---

[3] According to the parties' submissions, Ms. Procaccino and Mr. Jeansonne were co-owners of property in Jefferson Parish, Louisiana. That property was sold and the $340,000 in proceeds was placed into an escrow account until the parties could resolve Ms. Procaccino's claim to an equal share of the proceeds, which Mr. Jeansonne disputes. Mr. Kepper indicated to Mr. Weixler that Mr. Jeansonne disputed the value of her property claim more than he disputed the value of her severance agreement claim.

this litigation. Mr. Kepper stated that Mr. Jeansonne had offered the $180,000 in the hopes that he could put the litigation behind him before filing an answer and counterclaims later in the day. Mr. Weixler advised Mr. Kepper that his client was unlikely to accept this offer given that Ms. Procaccino estimates that her severance and real estate claims are worth approximately $300,000.

But Ms. Procaccino did indeed accept the offer. With Ms. Procaccino's blessing, Mr. Weixler called Mr. Kepper to advise him that Ms. Procaccino, who wished to put her entanglement with defendants behind her, had accepted the defendants' offer to settle. Expressing relief that that matter was concluded, Mr. Kepper asked that Mr. Weixler send him an email confirming Ms. Procaccino's acceptance and specifying the terms to which the parties had agreed, for the express purpose of binding the parties in writing, and so that Mr. Kepper was no longer obliged to file his client's answer and counterclaims by the end of the day.[4] Mr. Kepper said that he would reply to Mr. Weixler's email to document his clients' acceptance of the settlement terms.

On that same day that Mr. Kepper first initiated settlement discussions, Mr. Weixler emailed him at 3:23 p.m., confirming in

---

[4] According to Mr. Weixler, "[a]t no time did Mr. Kepper state that he needed Mr. Jeansonne's further approval to settle the matter for $180,000."

5

writing Ms. Procaccino's acceptance of the settlement offer and detailing the terms discussed by telephone with Mr. Kepper. About 20 minutes later, Mr. Kepper called Mr. Weixler to ask if Ms. Procaccino would consent to two additional terms: to seal the complaint in this matter and to keep certain information confidential. Mr. Weixler told Mr. Kepper that his client agreed with the additional terms. Mr. Kepper said that he would confirm the settlement agreement by replying to Mr. Weixler's prior email and memorialize the additional terms to which the parties had just agreed. Mr. Kepper asked that Mr. Weixler reply to his forthcoming email to say that Ms. Procaccino had no objections to including the two terms just agreed upon; Mr. Weixler agreed that he would confirm in writing that his client did not object.

Shortly after the phone conversation, Mr. Kepper emailed Mr. Weixler, stating that the defendants accepted the settlement agreement and referencing the additional terms agreed upon by telephone. As promised, Mr. Weixler replied to the email stating "No objection" to inclusion of the additional terms.

On the morning of May 16, 2017, Mr. Jeansonne reneged; he informed his attorney that the defendants no longer wanted to settle on the agreed-upon terms. Mr. Kepper says that he immediately called Mr. Weixler to inform him that the defendants

had declined to settle on the terms negotiated, but Ms. Weixler says that he did not receive a call from Mr. Kepper on May 16, 2017. Rather, according to Mr. Weixler, on the evening of May 16, Greg Latham, who is Mr. Kepper's co-counsel, called Thomas McEachin, who is a named partner at the firm where Mr. Weixler is an associate attorney, and who is also a longtime friend of Mr. Latham. Mr. Latham told Mr. McEachin that Mr. Kepper had authority from his client to settle the matter on the agreed-upon terms, but that Mr. Jeansonne had changed his mind. Mr. Latham said that Mr. Kepper had spent most of the day attempting to convince Mr. Jeansonne to honor the agreement and that Mr. Latham had unsuccessfully tried to do the same. Mr. McEachin then called Mr. Weixler and told him about the call with Mr. Latham.

At 9:58 a.m. on May 17, 2017, Mr. Weixler called Mr. Kepper to inquire as to why Mr. Jeansonne could back out of a confirmed, written agreement. Mr. Kepper remarked that Mr. Jeansonne "went to bed on Monday night" with a settlement agreement, and "woke up on Tuesday morning and decided" there was no deal. According to Mr. Weixler, Mr. Kepper "never said that he did not have Mr. Jeansonne's authority to settle the claims."

That evening at 5:28 p.m., Mr. Weixler emailed Mr. Kepper, stating that Ms. Procaccino planned to move to enforce the

settlement agreement. Mr. Kepper replied by arguing that Mr. Jeansonne was not bound because the parties had not signed a final settlement contract. Mr. Kepper attached a courtesy copy of the defendants' answer and counterclaims; the defendants' motion for leave to file their answer and counterclaims under seal was contested and therefore set for hearing.

> In his sworn declaration, Mr. Kepper stated:
>
> Because Mr. Jeansonne had given me only general authority to negotiate a settlement but not to enter into any final settlement agreement on behalf of all [d]efendants, I was careful to point out in my email to Mr. Weixler that "Obviously, all of these terms are subject to approval of a final settlement agreement." I never had express authority from Mr. Jeansonne to enter into any settlement agreement on behalf of the [d]efendants."

Mr. Jeansonne submits a declaration in which he states that he "gave Mr. Kepper general authority to negotiate a settlement on behalf of the [d]efendants, [but that he] **never** gave Mr. Kepper authority to enter into a binding settlement agreement on behalf of the [d]efendants." (emphasis in original). Mr. Jeansonne says that he "made it clear to Mr. Kepper that any settlement agreement would first have to be reduced to writing and submitted to [him] for [his] final review, approval, and signature." After Mr. Kepper informed him of the terms that had been negotiated and that counsel for plaintiff was preparing a final written agreement, Mr.

8

Jeansonne says he "consider[ed] the negotiated terms overnight" but "before receiving any written settlement agreement," Mr. Jeansonne says he called his attorney to inform him that the defendants did not wish to settle on the terms that had been negotiated.

The plaintiff moved to enforce the settlement agreement and the defendants moved to dismiss the plaintiff's breach of contract lawsuit as time-barred. On July 12, 2017, the Court denied the defendants' motion to dismiss and deferred ruling on the plaintiff's motion to enforce settlement agreement pending a limited evidentiary hearing. Two weeks later, the defendants moved to withdraw their opposition to the motion to enforce the settlement agreement and requested that the Court cancel the evidentiary hearing. The Court granted the defendants' motion to withdraw their opposition, cancelled the evidentiary hearing, and granted the motion to enforce the settlement agreement, but stayed its order until the Court issues its ruling on the plaintiff's motion for attorney's fees. The plaintiff now moves for attorney's fees.

I.

Ms. Procaccino seeks to recover the attorney's fees she incurred as a result of the defendants' initial refusal to abide

by the parties' May 15, 2017 settlement agreement. She says that the defendants' refusal constitutes bad faith insofar as the defendants (i) lacked evidence that that settlement agreement was unenforceable, (ii) misled the Court, and (iii) falsely claimed that their counsel was not authorized to settle, despite all evidence to the contrary. Only after the Court invited Mr. Jeansonne and his counsel to testify in support of their claim that defense counsel did not have Mr. Jeansonne's express authority to settle pursuant to the terms memorialized in the reciprocal emails did the defendants move to withdraw their opposition to the plaintiff's motion to enforce the settlement agreement. The defendants counter that they had a good faith foundation for their legal argument concerning express authority, and that the plaintiff offers little support justifying a grant of attorney's fees under the circumstances. The defendants submit that, once they realized that the Court disagreed with the defendants' analysis, they "almost immediately took steps to minimize the need for any further litigation." The defendants urge the Court not to penalize them for advocating their position in good faith.

A.

Ms. Procaccino invokes this Court's inherent power to sanction a party for advancing claims in bad faith. As the United States Supreme Court has observed:

> Federal courts possess certain "inherent powers," not conferred by rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). That authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). And one permissible sanction is an "assessment of attorney's fees"—an order, like the one [requested] here, instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side. Id., at 45, 111 S.Ct. 2123.

Goodyear Tire & Rubber Co. v. Haeger, 137 S.Ct. 1178, 1186 (2017). A court's inherent power to impose attorney's fees as a sanction is limited "to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders." Chambers v. NASCO, Inc., 501 U.S. 32, 47 (1991)(explaining that a court has inherent power to award attorney's fees to sanction the willful disobedience of a court order and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons). Compensatory, rather than punitive, in nature, such a sanction sensibly must be "'calibrate[d] to [the] damages caused by' the

bad-faith acts on which it is based." Haeger, 137 S.Ct. at 1186 (citation omitted). Thus, "[t]he complaining party...may recover "'only the portion of his fees that he would not have paid but for' the misconduct." Id. at 1187 (citations omitted).

The only issue is whether the defendants' conduct amounts to bad faith. The Court finds that the defendants inexplicably reneged on a binding settlement agreement and then unnecessarily multiplied proceedings by opposing enforcement of the settlement agreement with no factual predicate in support of their opposition.[5] Only after the Court indicated that it could only resolve the defendants' defense to settlement enforcement after evaluating Mr. Jeansonne's credibility during a hearing did the defendants withdraw their opposition to the plaintiff's motion to enforce settlement agreement.[6] The appropriate sanction is to compensate the plaintiff for the attorney's fees she was forced to incur as a result of the defendants' misconduct in obstructing the settlement and multiplying proceedings. The Court was unable to probe Mr. Jeansonne's credibility as to his defense that he did not give his attorney express authority to settle the case on the

---

[5] The defendants insisted that the Court must hear their motion to dismiss before or along with the plaintiff's motion to enforce the settlement agreement; the defendants also sought leave to file their answer and counterclaims under seal.
[6] It is clear that the defendants did not want their defense probed in open court.

12

terms his attorney proposed. Nevertheless, the Court finds that the record demonstrates that the defendants advanced their no-express-authority defense to the settlement agreement solely to harass or annoy the plaintiff, without any credible basis in fact. Indeed, notably, there is nothing in the record to indicate that Mr. Jeansonne acted in good faith when he refused to abide by the settlement agreement, an agreement he now admits is enforceable and binding. All of the evidence in the record amply supported a finding that the parties had settled their differences and that Mr. Jeansonne changed his mind, opting to aggressively pursue motion practice instead of honoring the settlement agreement (and all the while attempting to settle for less than the terms contained in the May 17 agreement). Unable to convince Mr. Jeansonne to honor the agreement, it appears that his attorneys were forced to attempt to explain the defendants' refusal by suggesting (in conclusory fashion and contrary to all other facts in the record) that Mr. Jeansonne had ordered counsel to settle the case on terms he proposed, but that he had not technically provided his "express authority" to be bound by those terms. When all facts and inferences therefrom undermine a position or strategy, which is nevertheless pursued, this is precisely the sort of defense that constitutes vexatious litigation conduct. Under the circumstances of this case and given the facts of record,

the Court finds that the defendants acted vexatiously and in bad faith in refusing to honor the settlement agreement and unnecessarily multiplied proceedings by forcing the plaintiff to continue to litigate a dispute that had been resolved by moving to enforce the settlement agreement as well as filing papers to oppose motions filed by the defendants.[7]  The plaintiff has demonstrated that sanctions in the form of attorney's fees, those which would not have been incurred but for the defendants' bad faith conduct, are warranted.

"Pursuant to its inherent power, a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  Seals v. Herzing Inc.-New Orleans, 482 Fed.Appx. 893, 897 (5th Cir. 2012)(citing Chambers v. NASCO, Inc., 501 U.S. 32, 55 (1991))(internal quotations omitted).  In Seals, the per curiam panel noted: "we have held that a party's refusal to abide by the [arbitration] award 'without justification' qualifies as vexatious behavior that can support the award of attorneys' fees by a federal court." Id. (citations omitted).[8]   Here, Mr. Jeansonne's refusal to abide by the

---

[7] Not to mention forcing the Court to expend considerable resources on a case that had already settled.
[8] In Seals, this Court held that a party who refuses to honor an enforceable settlement agreement may be ordered to compensate his opponent for the additional fees that party has been forced to incur.  Seals v. Herzing, Inc., No. 10-2848, 2012 WL 85280, at *4

settlement agreement without justification and to unnecessarily multiply proceedings compels the same result. In opposing the plaintiff's motion to enforce the settlement agreement, a motion that was supported by ample evidence, the defendants did not attempt to explain the evidence submitted, but simply concluded that Mr. Jeansonne had not technically given express authority to settle, despite the evidence in the record contradicting this "defense." Unfortunately, the defendants' unsupported litigation strategy (pursuing a defense that was withdrawn once the Court ordered an evidentiary hearing during which Mr. Jeansonne's credibility would be examined), which apparently was motivated by a desire to multiply proceedings or harass the plaintiff, cost Ms. Procaccino tens of thousands of dollars in attorney's fees. Advancing a colorless defense to settlement enforcement for oppressive reasons (to pursue unsubstantiated claims and defenses all the while accusing your ex-girlfriend, the plaintiff, of extortion) constitutes bad faith that is grounds for an award of attorney's fees as a sanction.[9]

---

(E.D. La. Jan. 11, 2012), aff'd, 482 Fed.Appx. 893 (5th Cir. 2012). The defendants attempt to distinguish Seals on the ground that the plaintiff in Seals "did not dispute any of the terms of the settlement agreement." But the defendants (continue to) fail to identify any terms of the settlement agreement here that they genuinely disputed.

[9] That Mr. Jeansonne's litigation strategy was driven by emotion or ill-feelings toward his ex-girlfriend, the plaintiff, is

15

*B.*

Mindful of the compensatory nature of an attorney's fee award as a sanction, the Court turns to consider whether the plaintiff's fee submission is calibrated to the damages caused by the defendants' bad faith litigation strategy in reneging on a settlement agreement and advancing a frivolous defense to its enforcement. Notably, the defendants offer no argument bearing on the quantum of the fee award requested by the plaintiff.

The Court has carefully scrutinized the plaintiff's submission on attorney's fees. Given that there is no dispute to be resolved concerning the quantum of the attorney's fees sanction award, the Court accepts the attorney's fees evidence, including the unrefuted affidavit of Judy Barrasso, bearing on the reasonableness of the fees. Not only are the fees requested

---

apparent on the record. According to the record made by the plaintiff in support of the motion to enforce the settlement agreement, from the moment Mr. Jeansonne became aware of the lawsuit, he gave his attorney an ultimatum to settle the case or file an answer and counterclaims that same day. Yet, even after the case had settled that day, Mr. Jeansonne decided to force the plaintiff to seek court enforcement of the settlement while he filed papers advancing his defense of the settled case and countersuing. That Mr. Jeansonne relented and finally agreed to adhere to the settlement agreement once the Court scheduled a hearing during which Mr. Jeansonne would be called to testify concerning the circumstances surrounding his purported failure to expressly authorize his attorney to settle the case does not, as the defendants argue, suggest good faith. Nor does this belated acquiescence imbue his prior conduct with good faith.

reasonable in quantum, but counsel for plaintiff has set forth the legal fees reflecting the date, time, and nature of the services performed; all of which concern services performed after and due to the defendants' refusal to abide by the settlement agreement. The fees requested are those incurred since May 15, 2017, when the parties agreed to settle the matter. After the defendants reneged, counsel for plaintiff was required to draft and file a motion to enforce settlement agreement, as well as draft and file an opposition to the defendants' motion to dismiss. Notably in the sworn declaration submitted by plaintiff's counsel in support of its attorney's fee award, counsel states:

> The Fee Schedule does not reflect all attorney's fees incurred by Ms. Procaccino from my firm, or even all fees incurred from May 15th to the present. Instead, the Fee Schedule includes only the legal fees from May 15th to the present that are directly attributable to the Defendants' decision to oppose the enforcement of their own agreement. For instance, the Fee Schedule entries relate to the preparation and filing of the Motion to Enforce the Settlement Agreement, the opposition to the Defendants' Motion to Dismiss, the instant Motion for Attorney's Fees, as well as filings related to such motions.

The defendants do not challenge this submission. The Court finds that the plaintiff's fee submission is reasonable and includes only those fees and costs attributable to the defendants' refusal to honor the settlement agreement.

17

Accordingly, for the foregoing reasons, the plaintiff's motion for attorney's fees is hereby GRANTED, and the defendants, jointly and in solido, are hereby ordered to compensate the plaintiff those attorney's fees, totaling $34,586.00, set forth in the Schedule of Legal Fees Incurred, which were incurred as a result of the defendants' bad faith refusal to honor the May 15, 2017 settlement agreement.

New Orleans, Louisiana, December 23rd, 2017

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE